IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JUANA MONTANO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00569-O-BP |
| | § | |
| ANDREW SAUL, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Juana Montano ("Montano") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

**I.    STATEMENT OF THE CASE**

Montano was born on October 8, 1977, has a general equivalency diploma, and is able to communicate in English. *See* Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 19-1 at 23. She applied for DIB on May 7, 2018, alleging that her disability began on September 18, 2017. Tr. 17. When she applied, she was thirty-nine years old, which is defined as a younger person. Tr. 23, 32. The Commissioner denied her claim initially on August 27, 2018, and upon reconsideration on December 21, 2018. Tr. 49, 61. Montano requested a hearing, which was held before Administrative Law Judge ("ALJ") Jack W. Raines on October 9, 2019, in Fort Worth, Texas with

Montano, her attorney, and Michelle Aliff, an impartial vocational expert ("VE"), present. Tr. 17. The ALJ issued his unfavorable decision on October 30, 2019, finding that Montano was not disabled. Tr. 24.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Montano had not engaged in substantial gainful activity since September 18, 2017, the alleged onset date, through December 31, 2017, the date on which she was last insured. Tr. 18. At step two, he determined that Montano had the severe impairments of right (dominant) ring and middle trigger fingers status post releases, right DeQuervain's release due to tenosynovitis, and bilateral carpal tunnel syndrome. *Id.* He found that Montano had mild limitations in three "paragraph B" categories: understanding, remembering, or applying information; ability to concentrate, persist, or maintain pace; and adapting or managing oneself. Tr. 20. He also found that Montano had no limitation in interacting with others. *Id.* At step three, the ALJ found that Montano's impairments did not meet or medically equal two of the "marked" impairments listed in 20 C.F.R. Pt. 404(p). Tr. 19. In particular, he concluded that Montano retained the residual functional capacity ("RFC") to do "sedentary work as defined at 20 C.F.R. § 404.1567(a), due to her inability to lift more than 10 pounds due to right upper extremity impairments" and that she could "occasionally lift and carry articles such as docket files, ledgers, and small tools." Tr. 22. At step four, the ALJ determined that Montano was unable to perform any past relevant work, which included being a warehouse associate, customer service representative, and line leader. Tr. 23, 181. At step five, the ALJ determined that based on her age, "the issues as to the acquisition and transferability of work skills are immaterial," but the ALJ did not identify any of the jobs that Montano could perform. Tr. 23. The ALJ determined that given her capability for the full range of sedentary work, a finding of "not disabled" was appropriate. *Id.*

The Appeals Council denied review on May 13, 2020. Tr. 5. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.   STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC,

which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197-98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.     ANALYSIS

Montano raises three issues on appeal. She claims that at step five the ALJ failed to (1) pose hypothetical questions reflecting her limitations to the VE, relying instead on the Medical-Vocational guidelines; (2) evaluate opinion evidence from a treating physician; and (3) properly consider the medical evidence and instead substituted his own medical opinion in determining her RFC. ECF No. 22 at 10-20.

### A.     The ALJ erred in solely relying on the Grids at step five.

When the Commissioner determines at step five that a claimant is not disabled and that she can perform alternative employment, substantial evidence must support the decision. *Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 721 (E.D. Tex. 2006). To determine there is work that a claimant can perform at step five, the ALJ relies on a VE's response to a hypothetical question or, alternatively, on the Medical-Vocational Guidelines (often referred to as "the Grids") promulgated to guide this determination. *Newton*, 209 F.3d at 458; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). When "the claimant either suffers only from exertional impairments or [her] non-exertional impairments do not significantly affect [her RFC,] the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *Newton*, 209 F.3d at 458 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987)). Thus, the ALJ may use the Grids when a claimant has an impairment that causes limitations in meeting a job's strength requirements. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00.

There are two exceptions to these general principles.

> First, even when a claimant has a non-exertional impairment, the Commissioner may nevertheless rely exclusively on the Grids to determine whether work exists in the national economy [that the] claimant can perform if (a) the ALJ determines that the non-exertional impairment does not significantly affect the claimant's RFC, and (b) substantial evidence supports that determination.

*Nobles v. Commissioner*, No. 9:00-cv-128, 2002 WL 553735, at *4 (E.D. Tex. Apr. 10, 2002) (citing *Newton,* 209 F.3d at 458).

> Second, even when a claimant's RFC is so significantly affected by a non-exertional impairment as to preclude resort to the Grids for a disability determination, the Grids may nevertheless be consulted as a 'framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the non-exertional limitations.'

*Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2)).

As mentioned above, ALJ found at step two that Montano had severe impairments regarding her fingers, hands, and wrists. Tr. 18. He determined that she had the RFC to perform sedentary work and lifting "due to her hand, finger, and wrist impairments, including carpal tunnel syndrome," but he did not include any manipulative limitations. Tr. 22-23. He concluded that Montano was unable to perform her past relevant work, and at step five, relying on the Grids, he determined that she was not disabled. Tr. 23.

Montano argues that her limitations relating to dropping things and needing help to dress herself and to perform household chores, are non-exertional in nature because they implicate limitations in handling, fingering, and feeling. ECF No. 22 at 12 (citations omitted). Therefore, she claims the ALJ erred in solely relying on the Grids at step five. *Id.* Additionally, she contends that since most sedentary jobs require the use of hands and fingers, the ALJ should have posed a hypothetical question to the VE as "'limitations of fine manual dexterity have greater adjudicative significance – in terms of relative numbers of jobs in which the function is required – as the person's exertional RFC decreases.'" *Id.* at 14 (citing Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *1 (S.S.A. Jan. 1, 1985)).

The Commissioner responds that the medical record and Montano's testimony did not reveal non-exertional limitations during the relevant time period. ECF No. 23 at 5-6. The

Commissioner states that her testimony regarding her limitations referred to the limitations she had at the hearing, not those prior to December 31, 2017. *Id.* at 6. Therefore, the Commissioner concludes that because of this lack of evidence during the relevant period, the ALJ correctly used the Grids to determine Montano was not disabled. *Id.*

In analyzing Montano's claim, the Court first must determine whether the impairments of pain, difficulty grasping, wrist limitations, and carpal tunnel syndrome are, in fact, non-exertional limitations since the ALJ did not separate Montano's exertional and non-exertional limitations. "It is the nature of an individual's limitations or restrictions that determines whether the individual will have only exertional limitations or restrictions, only non-exertional limitations or restrictions, or a combination of exertional and non-exertional limitations or restrictions." SSR 96–8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). While some limitations can be both exertional and non-exertional, exertional limitations address an individual's limitations of physical strength and ability to perform the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96–8p, 1996 WL 374184, at *5; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e); SSR 96–4p, 1996 WL 374187, at *1-2 (S.S.A. July 2, 1996). Non-exertional limitations address work-related limitations and restrictions that are not exertional such as mental abilities, hearing, seeing, speaking, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, and environmental restrictions. SSR 96–8p, 1996 WL 374184, at * 6; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e); SSR 96–4p, 1996 WL 374187, at *1-2.

The evidence in the record from the relevant time period suggests that Montano's pain, difficulty grasping, wrist limitations, and carpal tunnel syndrome would be, at the very least, non-exertional impairments as the medical evidence indicates that they impacted her ability to handle, finger, and feel. For example, the ALJ found that "[a]s of December 2017, [Montano] continued

to have symptoms, including pain" and that "she continued to have abnormalities as of the date upon examination of her right hand, fingers, and wrist." Tr. 22. The ALJ found that these continued symptoms of hand, finger, and wrist impairments, including carpal tunnel syndrome, limited her sedentary lifting. Tr. 23.

Additionally, Michal Douglas, M.D. ("Dr. Douglas"), a state agency medical consultant, noted that Montano reported in her December 27, 2017 exam that her right wrist joint was tender to palpation; had mild to severe signs of tingling, numbness, loss of feeling or strength, and pain; had difficulty with full extension of her right middle and ring fingers; and had weakness to extension of her right middle and ring fingers. Tr. 58. Also, Khawaja Nimr Ikram, D.O. ("Dr. Ikram"), Montano's hand surgeon, found that her right fingers had decreased sensation and she had pain when fully extending her fingers even after her surgery. Tr. 268. Dr. Ikram also noted that due to her inability to move her right hand for a year, it would take time for her to get her full range of motion and strength back in her hand. *Id.* Dr. Ikram noted in her November 2017 examination that she had decreased grip strength, experienced occasional numbness, and her range of motion of her wrist was decreased. Tr. 257. Montano continued to report to Dr. Ikram that she experienced a consistent pain when moving her fingers, though physical therapy was helping her range of motion at each of her follow up appointments. Tr. 253, 257, 263.

Despite the Commissioner's argument to the contrary, these medical opinions are evidence of Montano's condition in the relevant period since the physician's observations were made between September 18, 2017, the alleged disability onset date, and December 31, 2017, Montano's last date of being insured. Additionally, the Fifth Circuit has held "that retrospective medical diagnoses may constitute relevant evidence of pre-expiration disability." *McLendon v. Barnhart*, 184 F. App'x 430, 431 (5th Cir. 2006).

8

Therefore, since Montano suffers from several non-exertional limitations, the Court must next consider whether those non-exertional limitations significantly affected her RFC. After the ALJ determined that Montano suffered from several severe impairments, including bilateral carpal tunnel syndrome, he concluded the impairments were "not so significant as to warrant a finding [Montano] was disabled" and applied the Grids rather than consulting a VE at step five. Tr. 19, 22.

"The Fifth Circuit … has held consistently that a Step Two finding that a non-exertional mental impairment is "severe" precludes an ALJ from relying solely upon the Grid Rules when making the Step Five determination." *Pedigo v. Astrue*, No. 4:09-cv-2513, 2010 WL 3808687, at *4 (S.D. Tex. Sept. 27, 2010) (citing *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000)). However, the Fifth Circuit also has rejected the argument that "ALJ's finding that her non-exertional impairments, in conjunction with her physical impairments, were severe at Step Two, precluded the ALJ from finding that they were insignificant at Step Five." *Guillory v. Barnhart*, 129 F. App'x 873, 874 (5th Cir. 2005). Instead, "the dispositive issue in these cases appears to be whether there is substantial evidence to support the ALJ's finding at Step Five that the non-exertional impairments did not significantly affect the claimant's RFC." *Barnes v. Astrue*, No. 4:11-cv-526-Y, 2012 WL 1548923, at *5 (N.D. Tex. Mar. 5, 2012), *rec. adopted*, No. 4:11-cv-526-Y, 2012 WL 1549516 (N.D. Tex. Apr. 30, 2012). Therefore, if substantial evidence supports the ALJ's decision, remand is not automatically required if the ALJ relied solely on the Grids at step five regardless whether the claimant had non-exertional limitations.

Montano asserts that substantial evidence does not support the ALJ's reliance on the Grids because the medical record establishes that she had limitations in her wrists and fingers. ECF No. 22 at 14. Specifically, she asserts that her post-surgery examinations documented decreased sensation in her right little finger; tenderness to palpation in her right wrist, in parts of her third

9

and fourth metacarpals, and in the first dorsal extensor department; and inability to fully extend her right middle and ring fingers without pain. *Id.* 12-13. The evidence also showed Montano continued to suffer from mild to severe signs of tingling, numbness, loss of feeling or strength, or pain in the hand past the date she was last insured. *Id.* at 13. Montano concludes that these medical findings cannot logically lead to the ALJ's conclusion that there is "no basis to include manipulative limitations in her [RFC]." *Id.* at 14 (internal quotations and citations omitted).

The Commissioner counters that substantial evidence supports the ALJ's RFC finding that Montano can perform a full range of sedentary work. ECF No. 23 at 7. The Commissioner argues that Montano's claim that the absence of a medical opinion necessarily results in a lack of substantial evidence is misplaced. *Id.* at 9. Instead the Commissioner asserts that the proper question is whether the record as a whole contains sufficient evidence to assess the claimant's ability to work and that substantial evidence supports the ALJ's determination. *Id.* at 10. For example, Montano's post-surgery examinations only "demonstrated pain with motion of her fingers, but they did not show that Montano was unable to move her fingers or that she had any restrictions in the use of her hands." *Id.* Specifically, in her September 2017 examination, Montano had normal sensation in her fingers and in her December 2017 examination, she had normal strength in her fingers despite her complaints of hand weakness. *Id.* at 5, 10. Additionally, the Commissioner claims that Montano's pain did not rise to the level of disabling as she did not establish that it was "constant, unremitting, and wholly unresponsive to therapeutic treatment" and she acknowledged that physical therapy was helping. *Id.* at 5 (internal quotations and citations omitted). Therefore, the Commissioner contends that the medical record provides substantial evidence to support the ALJ's FCR determination. *Id.* at 10.

Here, the ALJ erred at step five in solely relying on the Grids rather than posing a hypothetical to a VE because substantial evidence does not support his decision that Montano did not have any significant non-exertional limitations. At step two, the ALJ specifically held that Montano suffered from several severe impairments. Tr. 18. He acknowledged various medical evidence relating to Montano's injury to her right wrist, carpal tunnel syndrome, and symptoms of pain, such as her inability to extend her fingers without pain, reduced range of motion, and pending carpal tunnel release. Tr. 19.

However, the ALJ determined that her impairments were reasonably expected to produce her pain and alleged symptoms, but that her allegations regarding the intensity, persistence, and limiting effects were not consistent with the medical evidence. Tr. 21. The ALJ determined that based on her physical examinations and her ability to perform activities such as preparing a sandwich and cleaning and laundering clothes, Montano did not require any manipulative limitations in her FCR despite her testimony stating that she cannot clean and often drops things that she holds in her right hand. Tr. 21-23. Instead, due to her hand, finger, and wrist impairments, including carpal tunnel syndrome, the ALJ determined that Montano only needed to be limited to sedentary lifting. Tr. 23.

While Montano's activities might provide some evidence of the intensity, persistence, and limiting effects of her impairments, it does not provide substantial evidence sufficient to disregard the medical evidence in the record that indicates that Montano suffers from carpal tunnel syndrome and symptoms of pain resulting from her right wrist injury. The ALJ did not reference any medical evidence explaining why her non-exertional impairment of carpal tunnel was not significant even though she was unable to extend her fingers without pain, had a reduced range of motion in her wrist, and had pending carpal tunnel release.

"While the Fifth Circuit does not require the ALJ to explain every detail of his opinion, where an internal inconsistency exists, the ALJ needs to provide sufficient explanation so a reviewing court is not left to speculate as to his reasons for ruling the way he did." *Rocha v. Astrue*, No. 2:04-cv-0324, 2008 WL 763070, *6 (N.D. Tex. Mar. 21, 2008). Since there is a difference between the ALJ's severe assessment of Montano's non-exertional impairments at step two and his assessment at step five, "[t]he ALJ should have explained why the impairment was severe at the earlier step, but not severe at the latter." *Id.* "As the ALJ's sole reliance upon the Grid Rules for purposes of satisfying the Commissioner's burden at Step Five was erroneous, the ALJ's finding that [Montano] was not entitled to disability insurance benefits was not supported by substantial evidence." *Hearne v. Barnhart*, 111 F. App'x 256, 258 (5th Cir. 2004). Consequently, substantial evidence does not support the ALJ's step five finding.

### B.   The ALJ's error at step five was not harmless.

The Fifth Circuit has held that "procedural perfection in administrative proceedings is not required. [The] Court will not vacate a judgment unless the substantial rights of a party have been affected." *Barratt v. Astrue*, No. 07-5167, 2008 WL 2325636, at *2 n.1 (5th Cir. 2008) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). "[P]rocedural improprieties...will therefore constitute a basis for remand *only if* such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (emphasis added).

The Court must consider whether the ALJ's error in solely relying on the Grids rather than on VE testimony or other similar evidence in step five was harmless. *See January v. Astrue*, 400 F. App'x 929, 931-32 (5th Cir. 2010) (applying the harmless error analysis after the ALJ erred in solely relying on the Grids). The ALJ found that Montano had severe limitations that required a

12

limitation of sedentary lifting. Tr. 19, 23. Since the ALJ did not consult a VE or utilize other similar evidence to develop the record, there is no evidence that he incorporated Montano's limitations into the jobs she could perform. The ALJ's decision that Montano could perform other work without consulting a VE or other similar evidence affected her substantial rights. Therefore, the error is not harmless, and remand is warranted.

### C. The ALJ erred by not evaluating Dr. Ikram's medical opinion.

Montano next claims that the ALJ never evaluated Dr. Ikram's written opinion regarding her injuries for her workman's compensation claim, but instead only referred to the opinions of the state agency medical consultants. ECF No. 22 at 16. She contends that Dr. Ikram is an "acceptable medical source" and the ALJ was required to "articulate how he considered the medical opinion." *Id.* (internal quotations and citations omitted).

The Commissioner asserts that Dr. Ikram's letter does not fall within the definition of a medical opinion, and the ALJ was not required to consider it. ECF No. 23 at 7. Additionally, the Commissioner argues that even if the letter were a medical opinion, it is irrelevant because it addresses Montano's condition and limitations prior to her surgery. *Id.*

When determining the extent of a claimant's ability to do physical and mental work activities, the ALJ must consider medical opinions together with the rest of the relevant evidence in the record. 20 C.F.R. § 416.945(a)(3). An ALJ "generally cannot reject a medical opinion without providing an explanation for that rejection, even if good reasons exist for disregarding the opinion. Failure to explain the rejection of a medical opinion justifies a remand." *Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018) (citing *Kneeland v. Berryhill*, 850 F.3d 749, 759-61 (5th Cir. 2017)).

13

A medical opinion is "statement" from a physician, psychologist, or other acceptable medical source that "'reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions.'" *Kneeland*, 850 F.3d at 759 (quoting 20 C.F.R. § 404.1513(a)(2)). "Medically acceptable evidence includes observations made by a physician during physical examination and is not limited to the narrow strictures of laboratory findings or tests results. *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990).

Dr. Ikram's Letter of Causation Analysis, dated September 19, 2017, concerns the extent of Montano's March 5, 2016 injury for her workers' compensation claim. Tr. 271. In his letter, Dr. Ikram discussed the history of Montano's injury and her treatment up to the date of the letter. *Id.* Dr. Ikram explained that even after conservative treatment, Montano still was unable to use her right hand and wrist without problems, had grip strength loss, and increased pain. Tr. 272. Based on his review of the facts and his examination of Montano, he recommended her for surgery. *Id.* Dr. Ikram did not describe what Montano still was capable of doing despite her injury, nor did he state whether her injury prevented her from performing any physical, mental, or other demands of work activities. Tr. 271-75. However, Dr. Ikram's letter included his opinions about the nature of Montano's impairment, as well as her medical history, clinical findings, diagnosis, and treatments prescribed. *Id.* Therefore, Dr. Ikram's letter is a medical opinion, and the ALJ was required to consider it.

As to the Commissioner's argument that Dr. Ikram's letter was irrelevant because the physician's evaluations were made prior to Montano's surgery, this Court has previously held that an ALJ may not disregard a medical opinion solely because it predates the disability onset date. *See Williams v. Saul*, No. 7:20-cv-00008-O-BP, 2020 WL 8254286, at *6 (N.D. Tex. Dec. 30,

2020), *rec. adopted*, No. 7:20-cv-00008-O-BP, 2021 WL 211812 (N.D. Tex. Jan. 21, 2021). *See also Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) ("[r]etrospective medical diagnoses constitute relevant evidence of pre-expiration disability, and properly corroborated retrospective medical diagnoses can be used to establish disability onset dates.").

Accordingly, the ALJ was required to at least evaluate Dr. Ikram's medical opinion and explain the weight he gave to the treating source's medical opinion. *Kimberly D. v. Berryhill*, No. 1:17-cv-32-BL, 2019 WL 1004664, at *3 (N.D. Tex. Feb. 14, 2019), *rec. adopted*, No. 1:17-cv-032-C, 2019 WL 1002360 (N.D. Tex. Mar. 1, 2019). The ALJ need not adopt every medical source in the record or provide a lengthy explanation of his reasoning, but the regulations set out six factors for assessing all medical opinions: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors such as the source's familiarity with disability proceedings. 20 C.F.R. § 404.1527(c).

Therefore, if the ALJ decided to not give any weight to Dr. Ikram's opinion regarding Montano's symptoms, severity, and prognosis, it would not be *per se* failure to reject his evidence as contradicted by other evidence. *See Kimberly D.*, 2019 WL 1004664, at *3. However, "it is reversible error to fail to do so explicitly in the issued decision," which is the case here. *Id.*

In his decision, the ALJ did not mention Dr. Ikram by name and did not indicate that any medical opinion evidence came from a treating physician, but instead only generally referenced the medical record and Montano's own testimony. Tr. 19-23. In reaching his conclusion, the ALJ found the state agency medical consultants' opinions to be insufficient, but he did not state whether he considered Dr. Ikram's medical opinion. Tr. 23. *Newton* requires an ALJ to consider the six factors before rejecting the opinion of a treating physician, and the ALJ's decision does not indicate

that he gave Dr. Ikram's opinion any consideration. *See Newton,* 209 F.3d at 456. Therefore, reversal is appropriate on this point.

### D.    Substantial evidence does not support the ALJ's RFC determination.

Finally, Montano argues that substantial evidence does not support the ALJ's RFC determination. ECF No. 22 at 17. Specifically, she alleges that the ALJ relied on his own unsupported medical opinion and improperly used her reported activities to determine her RFC. *Id.* at 17-20. Montano claims that no medical evidence supports the ALJ's determination that she can perform sedentary work with no additional non-exertional limitation in her hands. *Id.* at 18. Montano alleges that since the ALJ "explicitly" rejected the state agency medical consultants' opinions and did not evaluate Dr. Ikram's opinion, nothing beyond the ALJ's own opinion of her impairments supported his determination that she could perform a full range of sedentary work. *Id.*

Furthermore, Montano argues that the substantial evidence does not support the ALJ's reliance on her ability to lift and carry up to ten pounds based upon her reported activities. ECF No. 22 at 19. She contends that her ability to make a sandwich and clean and launder clothes does not provide any evidence of her ability to work consistently for eight-hour workdays. *Id.* Moreover, Montano alleges that the ALJ incorrectly referenced her function reports as to those tasks. *Id.* at 19-20. Montano claims that in her function reports, she stated that each task either took her a long time to complete, or that she needed help to complete that task. *Id.* at 19-20.

The Commissioner responds that Montano's argument is meritless because a "'lack of a medical source statement does not make the record incomplete.'" ECF No. 23 at 7 (citing *Holmes v. Astrue*, No. 3:10-cv-523-CWR-LRA, 2012 WL 775082, at *6-7 (S.D. Miss. Feb. 10, 2012)). The Commissioner asserts that in cases where a medical statement has not been provided, the court

must determine whether the substantial evidence in the record supports the ALJ's decision. *Id.* at 8. Additionally, he argues that assessment of Montano's work capacity is the ALJ's sole responsibility and that he is to base that assessment on all of the evidence, not just the medical evidence. *Id.* at 9. The Commissioner claims that the ALJ cannot be restricted to simply selecting and endorsing a medical opinion, but instead must consider the record as a whole, both medical and non-medical evidence, including Montano's reported activities, as they relate to her impairments and ability to perform work-related activities. *Id.*

"Neither the courts nor ALJs may rely on their own medical opinions as to the limitations presented by a claimant's impairments." *Howeth v. Colvin*, No. 12-cv-0979-P, 2014 WL 696471, at *11 (N.D. Tex. Feb. 24, 2014) (citing *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (per curiam)). Here, the ALJ did not refer to Dr. Ikram's medical opinion and rejected the medical opinions of the state agency medical consultants as insufficient. Tr. 19. Despite finding that there was insufficient evidence for the state medical consultants to consider, the ALJ took no steps to secure additional or updated medical opinions to support his RFC determination. Instead, the ALJ determined based on a brief description of Montano's abilities to prepare food and clean clothes that she did not require any manipulative limitations and only required a limitation to sedentary lifting. Tr. 22-23. Additionally, the ALJ determined that Montano could lift up to ten pounds and could occasionally lift and carry articles such as docket tiles, ledgers, and small tools. Tr. 22. However, the record does not indicate, nor does the ALJ reference, any support for these determinations. Therefore, there is no substantial evidence to support the ALJ's decision, and reversal on this point is appropriate.

## IV.   CONCLUSION

The ALJ reversibly erred by solely relying on the Grids for the purpose of satisfying the Commissioner's burden at step five because substantial evidence did not support his finding. The ALJ further erred by not evaluating Dr. Ikram's medical opinion and by not supporting his RFC determination with substantial evidence. Because of these reversible errors, the undersigned **RECOMMENDS** that Judge O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on March 26, 2021.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE